NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed / Docketed
January 4, 2007

IN RE:

OZARK AIR LINES, INC. d/b/a
GREAT PLAINS AIRLINES,

            Debtor.

PATRICK J. MALLOY, III,
TRUSTEE,

            Plaintiff,

v.

PUBLIC BUILDING COMMISSION
OF ST. CLAIR COUNTY, ILLINOIS,
as agent for and on behalf of
MIDAMERICA ST. LOUIS
AIRPORT/ST. CLAIR COUNTY,
ILLINOIS,

            Defendant.

Case No. 04-10361-R
Chapter 7

Adv. No. 06-01146-R

ORDER GRANTING PLAINTIFF/TRUSTEE'S
MOTION FOR SUMMARY JUDGMENT

Before the Court is the Plaintiff/Trustee's Motion for Summary Judgment and Brief in Support filed by Patrick J. Molloy, Trustee (the "Trustee") on August 17, 2006 (the "Motion")(Doc. 15), Defendant's Response to Plaintiff's [Motion], Request for Possession of Proceeds of Collateral Pursuant to 11 U.S.C. Section 1110, and Brief in Support filed by Defendant Public Building Commission of St. Clair County, Illinois, as agent for and on behalf of MidAmerica St. Louis Airport/St. Clair County, Illinois ("St. Clair") on September

5, 2006 (Doc. 16), as supplemented by Amendment to Defendant's Response to Plaintiff's [Motion], Request for Possession of Proceeds of Collateral Pursuant to 11 U.S.C. Section 1110 filed by St. Clair on September 7, 2006 (Doc. 17) (collectively, the "Response"), Trustee's Reply to Defendant's [Response] filed by the Trustee on September 13, 2006 (the "Reply")(Doc. 18), and Response to Trustee's [Reply] filed by St. Clair on September 25, 2006 (the "Response to Reply")(Doc.19).

**Jurisdiction**

The Court has jurisdiction of this core proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), (K) and (O); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056.  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Wright ex rel. Trust Co. of Kansas v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001), *citing* Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'"  Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir.  2000), *quoting* EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir.  2000).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Spaulding, 279 F.3d at 904, *citing* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986); Celotex, 477 U.S. at 324.  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  Liberty Lobby, 477 U.S. at 256.  Rather the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000), *quoting* Adler, 144 F.3d at 671.  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Adams, 233 F.3d at 1246.

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249.  Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the non-moving party.  See Adams, 233 F.3d at 1246.  However, "[i]f the [non-moving party's] evidence is merely colorable or is not significantly probabtive, summary judgment may be granted." Liberty Lobby, 477 U.S. 249-50 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

3

trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  Conversely, even where a movant's facts are undisputed, if two reasonable factfinders could reach different conclusions or "ultimate inferences" from the undisputed facts, summary judgment is not warranted.  See Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1382 (10th Cir. 1980).

**Undisputed Material Facts**

The record supports the following undisputed material facts and reasonable inferences favorable to the non-movant from such undisputed facts.

Debtor Ozark Air Lines, Inc., a Missouri corporation, d/b/a Great Plains Airlines ("Great Plains") was a "certificated" airline that maintained and operated aircraft in Oklahoma.  See Motion, Exh. H at 2; see also Motion, Exh. C at 1 and 3.

On August 26, 2003, "as an inducement to Debtor [Great Plains] to establish scheduled airline passenger service at MidAmerica St. Louis Airport," St. Clair agreed to make two contemporaneous loans to Great Plains in the aggregate original principal sum of $750,000 for the purpose of acquiring two aircraft and sufficient spare parts to maintain such aircraft (the "Loan").  See Motion, Exh. C at 1, Exh. H at 2; Motion at 2; Response to Reply, Exh. A at 1-2.  Great Plains executed two separate promissory notes each dated August 26, 2003, in favor of St. Clair in the original principal amounts of $500,000 and $250,000, respectively.[1]  Great Plains executed a Security Agreement, dated August 26, 2003, in which

---

[1] According to the Loan Agreement executed by Great Plains and St. Clair, the purpose of the $500,000 note was to provide Great Plains with funds to acquire a leasehold interest in two Dornier Luftfahrt GmbH D0328-100 aircraft bearing manufacturer's serial numbers 3010 (FAA Registration Number N473PS) and 3013 (FAA Registration Number N335PH).  See Response to Reply, Exh. A at 1-2.  The Loan Agreement also provided that the purpose of the $250,000 note was to "permit [Great Plains] to obtain sufficient spare parts to maintain the additional aircraft acquired,
(continued...)

4

Great Plains granted St. Clair a security interest in the following collateral to secure the Loan:

> All of the goods, equipment, machinery, inventory, parts and such other parts, all replacements and accessions thereto for use primarily but not exclusively in the repair, maintenance, operation and servicing of two (2) Dornier Luftfahrt GmbH DO328-100 Aircraft with Manufacturer's Serial Numbers 3010 and 3013, to be more specifically identified on a Spare Parts Inventory List to be provided by Debtor to Secured Party immediately upon identification or receipt of such Collateral [the "Collateral".]

Motion, Exh. C at 11.[2] David A. Johnson, Chief Executive Officer of Great Plains, stated in the uncontroverted Affidavit attached to the Motion, that the Collateral consisted of airplane "parts inventory" that "were maintained and used by [Great Plains], a certificated airline, for use in the operations of [Great Plains's] aircraft." Motion, Exh. H at 1-2.

St. Clair filed a UCC financing statement with the Secretary of State of Missouri, the Clerk of Oklahoma County, Oklahoma, and the Secretary of State of Illinois. St. Clair did not file any lien or notice of lien or any other instrument regarding the Collateral with the Federal Aviation Administration.

Great Plains defaulted on its loan obligations to St. Clair. See Response at 5. On January 23, 2004, Great Plains voluntarily commenced a Chapter 11 bankruptcy case. On March 11, 2005, the case was converted to a Chapter 7 bankruptcy case. At the time Great

---

[1](...continued)
in part, through the proceeds of the [$500,000] loan. Id.

[2] In the Security Agreement, the parties refer to the Collateral as "Spare Parts." See Motion, Exh. C at 2. Pursuant to Paragraph 6 of the Security agreement, entitled, "Covenants," the Debtor agreed to "only use the Spare Parts for the repair and maintenance of the Aircraft[.]" Motion, Exh. C at 4.

Plains commenced bankruptcy proceedings, Great Plains and the Collateral were located in Oklahoma.  See Motion at 3, Exh. H at 2.

On March 10, 2006, the Trustee filed the Amended Complaint seeking to avoid St. Clair's security interest in the Collateral pursuant to 11 U.S.C. § 544.

On June 26, 2006, the Court entered an Order authorizing the sale of the Collateral free and clear of liens, claims and encumbrances pursuant to 11 U.S.C. § 363 for the sum of $285,000.

**Contentions**

St. Clair asserts that it had a valid security interest in the Collateral and that its lien attached to the proceeds of the sale of the Collateral.  In the Motion, the Trustee asserts that because St. Clair failed to perfect its security interest in the Collateral pursuant to applicable federal law and Federal Aviation Administration ("FAA") regulations, the Trustee may avoid St. Clair's lien on the Collateral.  The Trustee contends that because Great Plains and the Collateral were located in the State of Oklahoma, Oklahoma law governs the *effect* of perfection or nonperfection and the priority of the parties' interests in the Collateral.  See Motion at 8.  The Trustee further asserts that under Oklahoma law, the Trustee, as a hypothetical lien claimant under 11 U.S.C. § 544 ("Section 544"), has priority over St. Clair's unperfected security interest in the Collateral.  In its Response, St. Clair argues that Section 544 is not applicable because St. Clair properly "perfected its security interest [in the Collateral] by filing a financing statement pursuant to the Uniform Commercial Code . . . in Missouri, Illinois, and Oklahoma."  Response at 4.  In the alternative, St. Clair contends that "even though its security interest may not be properly perfected, 11 U.S.C. § 1110 ("Section

6

1110") allows it to take possession of the sale proceeds due to Great Plains's pre-bankruptcy default in payment, the terms of the Security Agreement, and the failure of Great Plains to cure the default within 60 days of the entry of the Order for relief." Response at 4. St. Clair did not address the choice of law issue or dispute the Trustee's contention that Oklahoma law governs the issue regarding priority of the parties' interests in the Collateral.

**Conclusions of Law**

Section 544(a)(1) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date the bankruptcy petition is filed." Pearson v. Salina Coffee House, Inc., 831 F.2d 1531, 1532 (10th Cir. 1987). In other words, the Trustee has the power to avoid an unperfected lien on property of the estate which would be voidable by a hypothetical judicial lien creditor. See 11 U.S.C. § 544(a)(1).

In order to assess the relative rights of the Trustee and St. Clair, the Court must examine the applicable law. The threshold issue before the Court is whether St. Clair had a perfected security interest in the Collateral on January 23, 2004, the date Great Plains filed bankruptcy.[3]

**Perfection of Security Interests in Aircraft and Spare Parts Under Federal Law**

Generally, the validity, nature, and effect of liens in bankruptcy proceedings are governed by state law. See Potucek v. Cordeleria Lourdes (In re Wilson), 310 F.2d 527, 532

---

[3] "[A]s a general rule[,] liens which are perfected . . . prior to the date of bankruptcy are valid as against the trustee and those not so perfected or perfected after bankruptcy are invalid as against the trustee." Loye v. Denver U.S. Nat'l Bank (In re Luchetta), 341 F.2d 402, 403 (10th Cir. 1965)(citation omitted).

7

(10th Cir. 1962), *citing* Porter v. Searle (In re Greenband), 228 F.2d 748, 750 (10th Cir. 1955); Rooney v. Mason (In re Johnson), 394 F.2d 250, 253 (10th Cir. 1968)("A federal court seeking to determine the validity of a security interest challenged by the trustee in bankruptcy must look to the applicable state law.").  However, the Federal Aviation Act (sometimes hereinafter referred to as the "Act") governs perfection of a security interest in aircraft and related equipment and other matters regarding registration of conveyances and liens affecting title to aircraft.  See 49 U.S.C. §§ 44101- 44113; see also G & B Aircraft Mgmt. v. Smoot (In re Utah Aircraft Alliance), 342 B.R. 327, 334 n. 21 (B.A.P. 10th Cir. 2006)(and cases cited therein).  The Act created a "central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft." Philko Aviation, Inc. v. Shacket, 462 U.S. 406, 411 (1983)(internal quotation marks and citation omitted).

Section 44107 of the Federal Aviation Act, entitled "[r]ecordation of conveyances, leases and security instruments[,]" provides in pertinent part:

> (a) Establishment of system.  The Administrator of the Federal Aviation Administration shall establish a system for recording–
>   (1) conveyances that affect an interest in civil aircraft of the United States;
>   (2) leases and instruments executed for security purposes, including conditional sales contracts, assignments, and amendments, that affect an interest in–
>     (A) a specifically identified aircraft engine . . . ;
>     (B) a specifically identified aircraft propeller . . . ;
>     (C) an aircraft engine, propeller, or appliance maintained for installation or use in an aircraft, aircraft engine, or propeller . . . ; and
>     (D) spare parts maintained by or for an air carrier holding a certificate . . . ; and

> (3) releases, cancellations, discharges, and satisfactions related to a conveyance, lease, or instrument recorded under clause (1) or (2) of this subsection.

49 U.S.C. § 44107 (emphasis added). Section 44108 of the Act provides that until a security interest in aircraft or related equipment is recorded in accordance with Section 44107, such interest is valid only against the person making the conveyance and a person with actual notice of the conveyance. See 49 U.S.C. § 44108.[4]

In Philko Aviation, Inc. v. Shacket, 462 U.S. 406 (1983), the Supreme Court addressed the statutory provisions of the Act, Sections 1403(a)(1) and 1403(c), which are now codified at 49 U.S.C. §§ 44107(a)(1) and 44108(a).[5] In Philko, the Court concluded that–

> every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected. Furthermore, because of these federal requirements, state laws

---

[4] Section 44108 provides–

> (a) Validity before filing. Until a conveyance, lease, or instrument executed for security purposes that may be recorded under section 44077(a)(1) or (2) of this title is filed for recording, the conveyance, lease, or instrument is valid only against–
> (1) the person making the conveyance, lease, or instrument;
> (2) that person's heirs and devisees; and
> (3) a person having actual notice of the conveyance, lease, or instrument.

49 U.S.C. § 44108.

[5] The registration provisions of the Federal Aviation Act of 1958 were first codified at 49 U.S.C. §§ 1403(a)(1) and 1403(c). In 1994, the sections of the Act were renumbered by technical amendments to the Act, but such amendments did not materially alter the content of the registration provisions. See Act of July 5, 1994, Pub. L. No. 103-272. Thus, cases interpreting Sections 1403(a)(1) and 1403(c) of the prior Act are relevant when interpreting Sections 44107(a)(1) and 44108(a) of the current Act. See e.g., Utah Aircraft Alliance, 342 B.R. at 334 n. 14 (citations omitted); Solodky v. Traub, Butz & Fogerty and Dover Fund. Corp. (In re Equipment Leassors of Pa.), 235 B.R. 361, 364 n.5 (E.D. Pa. 1999).

9

>permitting undocumented or unrecorded transfers are preempted, for there is a direct conflict between [Section 44108(a)] and such state laws, and the federal law must prevail.

Philko, 462 U.S. at 409-10 (citation omitted). "According to the Tenth Circuit, 'Congress has preempted the field and state recording statutes are not applicable to such instruments." Utah Aircraft Alliance, 342 B.R. at 334 (citation omitted).[6]  "[F]ederal law rather than state law governs the rights of claimants to aircraft to the extent that these rights are dependent upon fact or time of recordation of conveyances." See Northern Ill. Corp. v. Bishop Distribut. Co., 284 F. Supp. 121, 124 (W.D. Mich. 1968)(citation omitted).

In the Response, St. Clair argues that Section 44107 of the Act is not applicable and that its security interest in the Collateral was properly perfected under state law. St. Clair asserts that the Collateral was "inventory" "not attributable to any specific plane[,]" and that its security interest in the inventory was properly perfected by filing a financing statement under the Uniform Commercial Code. See Response at 10-11.

Section 44107(a)(2)(D) requires that instruments executed for security purposes that affect interest in "spare parts maintained by or for an air carrier holding a certificate issued under section 44705 of this title" be recorded in the central recording system established by

---

[6] The Court notes that Article 9 of the Uniform Commercial Code (as adopted in Oklahoma, Illinois and Missouri), exempts from the filing provisions of Article 9 transactions as to which a system of filing has been established under federal law and provides that when such a system exists, perfection of a relevant security interest can be achieved only through compliance with that system (i.e., filing under Article 9 is not a permissive alternative). See e.g., 12A O.S. § 1-9-311; see also Comment 2 of the Uniform Commercial Code Comments (2001 Volume) to Section 1-9-311 ("An example of the type of federal statute referred to in subsection (a)(1) [of Section 1-9-311] is 49 U.S.C. §§44107-11, for civil aircraft of the United States.").

10

the FAA.  See 49 U.S.C. § 44107(a)(2)(D);[7] see also Avair, Inc. v. Fairchild Aircraft Corp. (In re Avair, Inc.), 98 B.R. 261, 265 (Bankr. W.D. Va. 1998)(security agreements affecting spare aircraft parts must be filed with the FAA).  In Avair, the court concluded that the Act "requires the recordation of *every* instrument executed for security purposes affecting the title to or interest in spare parts maintained by or on behalf of a certificated air carrier[.]"  Avair, 98 B.R. at 264-65 (emphasis added).  Perfection of a security interest in an inventory of aircraft parts (other than engines and propellers) which are not attributable to any particular plane and not held as "spare parts" by or for an "air carrier" is governed by Article 9.  See In re AVCentral, Inc., 289 B.R. 170, 172 (Bankr. D. Kan. 2003).

To support its argument that the Collateral constituted "inventory" (which may be perfected under state law), rather than spare airplane parts, St. Clair relies on AVCentral.  In AVCentral, the central issue was whether a creditor claiming security interests in aircraft acquired by the debtor for "parting out," but which were intact aircraft when the security interests were granted, must perfect its interest under federal law rather than by filing a financing statement on inventory under the Uniform Commercial Code.  AVCentral, 289 B.R. at 171.  The trustee argued that "to treat the aircraft parts as 'aircraft' subject to federal law ignores their true intended use-as inventory held for resale."  Id.  The court held that the creditor's lien on the aircraft was properly filed with the FAA notwithstanding that the debtor intended, at the time the security interest was granted, to disassemble the plane in order to

---

[7] Pursuant to 49 U.S.C. § 40102, "'spare part' means an accessory, appurtenance, or part of an aircraft (except an aircraft engine or propeller), aircraft engine (except a propeller), propeller, or appliance, that is to be installed at a later time in an aircraft, aircraft engine, propeller, or appliance." 49 U.S.C. § 40102(a)(43).

11

sell the parts. See id. Although the AVCentral court stated, in dicta, that "[a]n inventory of aircraft parts (other than engines or propellers) unattributable to any particular plane and not held as "spare parts" by or for an "air carrier" may very well fall outside of § 44107" (Id. at 173.), St. Clair did not argue that the Collateral was "unattributable to any particular plane." St. Clair failed to explain how AVCentral supports its position. David Johnson's uncontroverted affidavit states "that at all times the referenced parts were maintained and used by [Great Plains], a certificated airline, for use in the operations of [Great Plains's] aircraft." Motion, Exh. H at 2. St. Clair failed to offer any facts or evidence to support its assertion that the Collateral was "inventory" as opposed to airplane parts. Great Plains was not in the business of selling parts; it was a certificated airline operating two aircraft, and the subject "inventory" or "spare parts" were maintained and used by Great Plains in the operation of its two aircraft. See Motion, Exh. H at 2.

The Court finds that the sole method for St. Clair to perfect its security interest in the Collateral was to file the appropriate documentation in accordance with the Federal Aviation Act. Because St.Clair failed to record its interest in the Collateral in accordance with federal law, St. Clair's security interest in the Collateral was not perfected on January 23, 2004, the date Great Plains filed its bankruptcy petition.

**Determination of Priority of Interests in Collateral Under State Law**

While perfection of security interests in aircraft and spare parts is governed by federal law, the validity of security interests and priority of such security interests are determined by state law. See Philko, 462 U.S. at 413; Aircraft Trading & Servs., Inc. v. Braniff, Inc., 819 F.2d 1227, 1231-32 (2d Cir. 1987)(recognizing that priority and validity of interest are

determined under state law; perfection as to third parties is governed by federal law); South Shore Bank v. Tony Mat, Inc., 712 F.2d 896, 898 (3rd Cir. 1983)(per curiam)(priority of lien perfected under the federal act is determined by state law); Utah Aircraft Alliance, 342 at 334 (state law determines the nature of property interest and the Act governs issues of perfection).

The Trustee asserts, in his Motion, that because Great Plains and the subject collateral were located in Oklahoma, the priority of the parties' interests should be determined under Oklahoma law.  St. Clair did not address the issue of which state's laws apply or dispute the Trustee's contention.  The Security Agreement provides that "[t]his Agreement shall be governed by and construed in accordance with the substantive laws of the State of Illinois, except to the extent the Uniform Commercial Code of the States of Missouri and Oklahoma apply, without regard to its principles of conflicts of law."[8]  Motion, Exh. C at 9.  The Court need not determine whether the laws of Oklahoma, Illinois or Missouri apply to determine the priority of the parties' interests in the Collateral because Article 9 of the Uniform Commercial Code, as adopted in Oklahoma, Illinois and Missouri, provides that a perfected security interest has priority over a conflicting unperfected security interest.  See 12A O.S. § 1-9-322 (Oklahoma); 810 Ill. Comp. Stat. 5/9-322 (Illinois); Mo. Rev. Stat. § 400.9-322 (Missouri).[9]  Under Section 544(a)(1) of the Bankruptcy Code, the Trustee possesses the

---

[8] There is no material difference between the relevant provisions of the Uniform Commercial Code as adopted by Oklahoma and Illinois.  Accordingly, choice of law is not outcome determinative.

[9] Section 9-322 of the Uniform Commercial Code, as adopted by Oklahoma, Illinois and Missouri, entitled "Priorities among conflicting security interest in and agricultural liens on same collateral" provides that a "perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien."  12A O.S. § 1-9-322; 810 Ill. Comp.
(continued...)

13

same rights that an ideal hypothetical lien claimant without notice possesses as of the date the bankruptcy petition is filed.  See Pearson v. Salina Coffee House, Inc., 831 F.2d 1531, 1532 (10th Cir. 1987).  Thus, under Section 544(a)(1), the Trustee has priority over St. Clair's unperfected lien on the Collateral.

**Section 1110 is Not Applicable in Chapter 7**

In the alternative, St. Clair argues that "even though its security interest may not be properly perfected, 11 U.S.C. Section 1110 allows it to take possession of the sale proceeds because of the pre-bankruptcy default in payment, the terms of the Security Agreement, and the failure of Great Plains to cure the default within 60 days of the entry of the Order for relief."  Response at 4.  Section 1110 permits an eligible financier of aircraft (or related equipment), following a sixty-day waiting period, to take possession and enforce any of its rights or remedies under the applicable financing documentation, notwithstanding any other provision of the Bankruptcy Code, unless the debtor airline cures all defaults under such financing documentation and agrees to perform all of its obligations thereunder.  See 11 U.S.C. § 1110.[10]

---

$^9$(...continued)
Stat. 5/9-322; Mo. Rev. Stat. § 400.9-322.  All citations to state statutes herein refer to the statute that was in effect as of January 23, 2004 (the bankruptcy petition date), unless otherwise noted.

[10] Section 1110 applies only to collateral that is aircraft, aircraft engines, propellers, appliances, and spare parts, as such terms are defined by the Federal Aviation Act.  See 11 U.S.C. § 1110(a).  While St. Clair argued that the Collateral was "inventory," rather than spare parts, and not subject to the exclusive recording requirements of the Federal Aviation Act, St. Clair contends that it should prevail under Section 1110, which only applies to "an aircraft, aircraft engine, propeller, appliance, or spare part (as defined in section 40102 of title 49)[.]"  11 U.S.C. § 1110(a)(emphasis added).

14

St. Clair relies on California Chieftan v. Air Vermont, Inc. (In re Air Vermont, Inc.), 761 F.2d 130 (2nd Cir. 1985) to support its contention that it is entitled to possession of the sale proceeds under 11 U.S.C. § 1110.  In Air Vermont, the court held that an unperfected lien on aircraft parts was protected from avoidance under Section 544 under the express language of Section 1110.  See id. at 130.  However, in Air Vermont, the secured creditor was asserting its rights under Section 1110 in a Chapter 11 case.  This bankruptcy case is a Chapter 7 case.  Prior to March 11, 2005, when this case was pending under Chapter 11, St. Clair never sought relief under Section 1110.

Section 103(g) of the Bankruptcy Code provides that "[e]xcept as provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter."  11 U.S.C. § 103(g). Thus, Section 1110, found in Subchapter I of Chapter 11, is not applicable in this Chapter 7 case.  See id.; see also Toren v. Braniff, Inc. (In re Braniff Airways, Inc.), 50 B.R. 393, 402 (Bankr. Tex. 1984)("Section 1110 provides absolutely no protection if [a debtor] should seek protection under Chapter 7 of the Bankruptcy Code."); In re Airlift Int'l, Inc., 26 B.R. 61, 63 (Bankr. Fla. 1982)("Section 1110 of the Bankruptcy Code . . . is an exception to the automatic stay of 11 U.S.C. § 362 which provides protection to a narrow class of creditors in a Chapter 11 case.").

**Conclusion**

St. Clair failed to properly perfect its security interest in the Collateral pursuant to the Federal Aviation Act.  Pursuant to Oklahoma law, the Trustee's hypothetical lien under 11 U.S.C. § 544 has priority over St. Clair's unperfected lien on the Collateral.  St. Clair failed to present sufficient evidence that would allow a reasonable trier of fact to find in favor of

St. Clair on the Trustee's action to avoid St. Clair's security interest in the proceeds of the sale of the Collateral. Accordingly, the Trustee's Motion is granted, and judgment is granted in favor of the Trustee under 11 U.S.C. § 544. A judgment consistent with this Order shall be entered contemporaneously herewith.

**SO ORDERED** this 4th day of January, 2007.

_____
DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT